[Civ. No. 15093. First Dist., Div. One. Aug. 18, 1952.]

J. ALFRED MUTASCIO, Appellant, v. LOUIS BARTO-LUCCI et al., Defendants; THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO (a Corporation), Respondent.

Albert Picard and Raymond N. Baker for Appellant.

Frederick M. Fisk, W. Burleigh Pattee and Chickering & Gregory for Respondent.

WOOD (Fred B.), J.—Plaintiff brought this action against the defendants, alleging two causes of action; one, for $1,026 as compensation for services rendered at the agreed rate of $400 a month, and the other, for $2,000 as the reasonable value of services rendered at the request of the defendants. Upon the conclusion of plaintiff's case in chief, the defendants moved for and the court granted a nonsuit as to each of the counts. Plaintiff appeals from that portion of the order granting the nonsuit as to the second count and the defendant bank. He does not appeal from the portions of the order that relate to the first count or to the individual defendants.

■ The sole question is whether or not it is competent for plaintiff to prove an oral agreement between him and the defendant bank for the payment to him of a 2 per cent commission for his services and the use of his liquor licenses in purchasing for the bank 100,000 gallons of sweet wine. The parties executed a written agreement which dealt with this transaction but did not therein provide for payment of a commission to plaintiff.

It appears that the defendant bank was engaged in selling certain wine pledged to the bank by the Oakville Winery to secure an indebtedness of the winery to the bank. In the course of time, the only wines remaining unsold were dry wines. Under prevailing market conditions it was not feasible to sell them except in conjunction with the sale of sweet wines. After some negotiations an arrangement was made for the acquisition of 100,000 gallons of sweet wines by the use of certain licenses which the plaintiff had and which the bank did not have. These negotiations, which took place during October, 1947, resulted in a written agreement dated October 29, 1947, executed by California Grape Products Corporation as first party, by plaintiff J. Alfred Mutascio, as second party, and defendant The Anglo California National Bank of San Francisco, as third party. The first party agreed to sell 100,000 gallons of California sweet wine at 50 cents per gallon or the total sum of $50,000, and the second party agreed to buy the same. The third party agreed to pay the first party the $50,000 as the purchase price for the wine on the condition that title and possession of the wine would remain with the first party, subject to the direction and control of the third party until the third party should notify the first party in writing that the second party had paid the third party the full purchase price or had been released from the obligation to do so by the third party. The second party agreed to execute a nonnegotiable demand note payable to third party and secured by the wine. First party agreed to deliver the wine to second party or to such person as third party should designate. Third party agreed to credit second party with payment upon the note for such portion of the wine as third party should fail within six months to direct first party to deliver to second party. Second party agreed to use his best efforts to dispose of the wine delivered to him by first party upon written instructions of third party. Third party agreed from time to time to release to second party upon trust receipts such amounts of the wine as should be determined by third party;

second party, upon sale thereof, to account to third party for the proceeds, "which proceeds the third party shall apply first towards the payment of interest and then principal due on the demand note. . . . After the entire principal and interest of said demand note has been paid, the remainder of said proceeds shall be applied by the third party towards the extinguishment of the obligations of the Oakville Winery to the third party, . . . Upon the extinguishment of said obligations, if there be any remainder, such remainder shall be returned to the second party." This contract also gave the third party the right and option at any time to take delivery for its own account of the undelivered portion of the wine upon crediting second party with payment upon the note of an amount equal to the purchase price of the undelivered gallons of wine.

For his part in this transaction (buying and selling the wine, and accounting for the proceeds of sale) plaintiff would own all of the proceeds, if any, remaining after payment of the purchase price of the wine and the extinguishment of the obligations of the Oakville Winery to the bank. That is the very subject matter of the asserted oral agreement, compensation for the purchase of the wine through the use of plaintiff's licenses. We find here no basis for an exception to the rules that the "execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument," (Civ. Code, § 1625) and that "[w]hen the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties . . . no evidence of the terms of the agreement other than the contents of the writing" (Code of Civil Proc., § 1856). The terms of the writing are not ambiguous, and there is no issue of mistake, illegality, or fraud.

Plaintiff seeks to characterize the asserted oral agreement as collateral, but his cases do not support him. In *Webber* v. *Smith*, 24 Cal.App. 51 [140 P. 37], the owner of a milk route delivered a bill of sale of vehicles and other tangible property which recited payment of $2,625. That did not preclude him from proving a separate oral agreement for the sale of the goodwill of the business for an additional sum. As stated by the court "the subjects dealt with in the bill of sale were distinct and separate from that about which it was claimed an oral agreement had been made. The bill of sale

specified and covered the tangible property. The intangible property was, according to plaintiff's testimony, the subject of a separate agreement which it was the intention of the parties to express in writing, but which was not reduced to that form. The mere fact that it had been the intention to make a writing covering the conditions of sale of the milk route and that such writing had never been made, would not affect the validity of the contract as it was represented to have been made by the plaintiff, nor entitle it to be viewed in any other light than that of a completed transaction, except as to the execution of it." (P. 53.) *Torrey* v. *Shea,* 29 Cal.App. 313 [155 P. 820], was simply a case which involved three separate written contracts for the sale of hops grown on a certain ranch, one contract for the 1909, another for the 1910 and still another for the 1911 crop. It was competent to show that these contracts were signed at the same time and that the parties orally agreed that the three were in fact a single contract. The law recognizes that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together" (Civ. Code, § 1642). Also, the oral agreement did not contradict or vary the terms of the writings. In *Gardiner* v. *Burket,* 3 Cal.App.2d 666 [40 P.2d 279], it appeared that a landowner who had executed a community oil lease was allowed to show an oral agreement with the lessee to the effect that the lessee would compensate the landowner for removing a dwelling house from the demised property. The lease was silent as to this subject and the agreement was distinct from the lease.

The facts of the instant case are more like those in *Cameron* v. *Ayres,* 175 Cal. 662 [166 P. 801]. There the parties had entered into a written contract whereby the plaintiff agreed to negotiate a loan for defendant for the erection of a building and defendant agreed to erect a building and employ plaintiff to superintend its construction and pay him 10 per cent. of the cost of construction. In view of that writing, it was held incompetent for plaintiff to prove an asserted oral agreement by the defendant to pay him a commission for obtaining such a loan.

In the instant case the asserted oral agreement was for the payment of compensation for the purchase of the wine through the use of plaintiff's licenses. The subsequent written agreement contains a provision contingently compensating plaintiff for such services, and constitutes an integrated agreement.

Proof of the asserted oral agreement is precluded by the parol evidence rule. Such proof is incompetent as a matter of law. Even if admitted in evidence, with or without objection by the adverse party, it is not available for consideration upon the review of a judgment of nonsuit. (See *Estate of Gaines,* 15 Cal.2d 255, 264-265 [100 P.2d 1055], and *Hanrahan-Wilcox Corp.* v. *Jenison Mach. Co.,* 23 Cal.App.2d 642, 644-645 [73 P.2d 1241].)

The portion of the order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied September 17, 1952, and appellant's petition for a hearing by the Supreme Court was denied October 16, 1952.